JOHN W. AND DORIS J. MINOVICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Minovich v. Commissioner
Docket No. 21061-87
United States Tax Court
T.C. Memo 1994-89; 1994 Tax Ct. Memo LEXIS 90; 67 T.C.M. (CCH) 2292; February 28, 1994, Filed *90 An order and decision will be entered for respondent. For respondent: Frank C. McClanahan. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was assigned pursuant to section 7443A(b)(3) and Rules 180, 181, and 182, [1] and is before the Court on respondent's Motion for Entry of Decision filed on September 17, 1993. Petitioners were served with a Notice of Filing permitting them to file on or before October 21, 1993, a notice of objection setting forth the basis for any objection. John W. Minovich (petitioner) filed his notice of objection. Petitioner Doris J. Minovich did not file an objection to respondent's motion. Before we address respondent's motion and petitioner's objection, it is important to set forth the prolonged history of this case. This case is related to the companion case, Minovich v. Commissioner, T.C. Memo. 1994-39, *91 opinion filed on January 31, 1994 (companion case), which involved petitioners' claimed deductions, losses, and investment tax credits relating to Music Masters, Ltd., for their taxable years 1979 and 1982. On April 6, 1987, respondent mailed a notice of deficiency to petitioners which determined deficiencies in petitioners' Federal income taxes for the taxable years 1980 and 1983, additions to tax, and additional interest as follows: Additions to Tax
Additional Interest
Year
Deficiency
Sec. 6659 Sec. 6621(d) [1]
1980
$ 1,475
$ 442.50
[2]
1983
3,075
757.50
[2]
The deficiencies, additions, and increased interest result from petitioners' claiming deductions, losses, and investment tax credits pertaining to their investment in a master sound recording program promoted by Music Masters, Ltd. Deductions and losses were claimed on Schedule E attached to their joint Federal income tax return for 1983. An investment tax credit was also claimed on their *92 1983 return and carried back to their joint Federal income tax return for 1980. Petitioners filed their petition in this case on June 30, 1987, seeking a redetermination of the deficiencies and additions to tax, and additional interest. Petitioners filed a Designation of Place of Trial naming Denver, Colorado, as the place of trial. With the filing of the Answer on August 31, 1987, the case was at issue. Rule 38. By Order dated November 4, 1988, we calendared the case for trial during the Court's January 30, 1989, Denver, Colorado, trial session at a time and date certain of 10:00 a.m., on January 31, 1989, and ordered the parties to file a report on or before January 17, 1989, as to whether or not they would proceed to trial. Respondent filed a report on January 17, 1989, stating that the case would go to trial; however, respondent was not ready for trial at the time and date set in the Court's November 4, 1988 Order because petitioners had not fully complied with respondent's request for production of documents served on petitioners on December 8, 1988. Petitioner submitted a letter on January 11, 1989, which was filed as a Motion to Continue. In the motion, petitioner requested *93 a continuance on the basis of discovery problems he faced. By Order dated January 17, 1989, we granted a general continuance. Thereafter, on August 29, 1989, the case was calendared for trial at the trial session commencing on October 23, 1989, in Denver, Colorado. Again, by letter dated September 17, 1989, and received by the Court on September 26, 1989, petitioner requested a continuance due to discovery problems he continued to encounter. We filed the letter as a Motion to Continue and the motion was denied on September 26, 1989. The case was called at the Denver trial session on Monday, October 23, 1989. Counsel for respondent appeared and was heard. There was no appearance by petitioners or anyone appearing on their behalf. Respondent's counsel reported that the parties had executed a stipulation to be bound by the result of two cases and that the stipulation was mailed to the Court on October 17, 1989. In the Stipulation of Settlement filed on October 20, 1989, the parties stipulated that: (1) The Music Masters issue (and related additions) is the only issue in the case; (2) this case, which concerns the taxable years 1980 and 1983, is related to the companion case *94 which involves the same issues for the taxable years 1979 and 1982; (3) the parties stipulated that, for purposes of valuation of the master sound recording purportedly leased by petitioners from Music Masters, Ltd., they would be bound by the result in the case entitled Joan Propst Maultsby, Petitioner v. Commissioner of Internal Revenue, Respondent, docket No. 36109-85, which was designated as "The Controlling Case"; and (4) for all other purposes, except valuation, the Stipulation of Settlement entered into by the parties in the companion case shall apply to this case, and the parties incorporate such stipulation, by reference, into this stipulation and agree to be bound by all of its provisions for the taxable years 1980 and 1983, in the same manner as for the taxable years 1979 and 1982. [2]
*95 In Hunt v. Commissioner, 938 F.2d 466 (4th Cir. 1991), the United States Court of Appeals for the Fourth Circuit affirmed T.C. Memo. 1989-660, in which we decided the Federal income tax consequences of the master recording lease program established by Music Masters, Ltd. The deductions and investment tax credits were disallowed, and respondent's determinations of additions under section 6653(a) (negligence), section 6659 (valuation overstatement), section 6621(c) (increased rate of interest), and section 6661 (substantial understatement of tax) were sustained. Likewise, in the companion case, Maultsby v. Commissioner, T.C. Memo. 1989-659, we decided that Ms. Maultsby was not entitled to deductions and credits claimed with respect to her investment in Music Masters, Ltd. master recording lease program and that she was liable for the additions determined by respondent. No petition for certiorari was filed by the taxpayers in the Hunt case which was affirmed on appeal on July 25, 1991. The decision in the Maultsby case was entered on June 22, 1993, and became final on September 20, 1993, *96 inasmuch as no notice of appeal was filed by Ms. Maultsby. See secs. 7481(a)(1) and (2); 7483. In anticipation of receiving a decision document in the Maultsby[3] case, on June 11, 1993, we ordered the parties in this case to submit a decision document on or before August 10, 1993, in accordance with their stipulation of settlement filed on October 20, 1989. Respondent filed a Status Report on August 16, 1993, informing the Court that a proposed decision document was mailed to petitioners on July 28, 1993, in accordance with the Stipulation of Settlement filed by the parties on October 20, 1989, and that respondent did not believe petitioners would sign the proposed decision document. Respondent then filed the Motion for Entry of Decision on September 17, 1993. Then we received a document from petitioner dated August 19, 1993, which was filed on September 17, 1993, as a *97 Second Motion to Dismiss for Lack of Jurisdiction. In that motion petitioner stated that (1) he is a "NON RESIDENT ALIEN NONTAXPAYER private citizen"; (2) the Court has no "Lawful Jurisdiction/Authority" over petitioner; and (3) he has "no Federal tax liability". Petitioner's motion was denied. Attached to the motion to dismiss was a copy of a Motion to Dismiss for Lack of Jurisdiction filed by petitioner in the companion case on July 2, 1993, and denied on July 6, 1993. As grounds for his motion in that case, petitioner stated: A great amount of time has elapsed since I mistakenly petitioned your tax court. In that time, through diligent studies, I have learned precisely the extent of the incorporated Federal Government's JURISDICTION/AUTHORITY and consequently, the limitations of its taxing powers. It is apparent, from these studies, that my status is that of "NONRESIDENT ALIEN" which is outside of your JURISDICTION/AUTHORITY. (Please refer to enclosed copy of my "LAWFUL" AFFIDAVIT which sets forth my status explicitly, AFFIDAVIT sent to your tax court May 7, 1992). * * * I always believed (In the past) that the Federal income tax was mandatory on wages. I *98 was a NON-Volunteering private citizen (as defined in my AFFIDAVIT) with respect to the Federal Income Tax. It is apparent from my studies that I have been led by deceptive means (fraud) into paying taxes to a jurisdiction where none were owed. * * * I herein "squarely challenge" you to prove that you have JURISDICTION/AUTHORITY over me in any way with regard to my status as defined in my "LAWFUL" AFFIDAVIT to you (status of nonresident alien).
Soon thereafter petitioner mailed a document to the Court dated September 14, 1993, challenging the Court's jurisdiction, which we filed on September 21, 1993, as his refusal to sign the decision document. Attached to petitioner's refusal to sign the decision document was his affidavit which stated that: I am a NATURAL BORN FREE adult CITIZEN OF THE State of Ohio by birth, thus an inhabitant of the United States of America. I am endowed with certain God given! Rights, as set forth in America's founding documents. I have never knowingly or by intelligent act waived any of these Rights. I obey all American Law and pay all Lawful taxes for the common good in jurisdictions that apply to me. I stand *99 in Proper Person, with Assistance, Special. The foregoing, including my STATUS and ! RIGHTS, are not NEGOTIABLE.
* * * Petitioner filed his objection on October 25, 1993, which encompasses his views espoused in his prior motion to dismiss for lack of jurisdiction and refusal to sign the proposed decision document. Like the companion case, we are confronted here with a refusal to accept and comply with the terms of the stipulation filed on October 20, 1989. Petitioner does not want to pay his liability for Federal income taxes, additions to tax, and increased interest. He has repeatedly made frivolous arguments hoping that he will find some semantic technicality that will render him exempt from Federal income tax, which applies generally to all U.S. citizens and residents. His unintelligible and groundless arguments are no more than stale tax protester contentions long dismissed by this Court and other courts which have heard them. Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990); Abrams v. Commissioner, 82 T.C. 403, 406-407 (1984); Rowlee v. Commissioner, 80 T.C. 1111 (1983). *100 We see no need to waste our time by addressing each of petitioner's groundless contentions. Moreover, his actions have delayed the disposition of this case. It suffices to say that petitioners chose this forum in which to litigate their tax dispute. We acquired jurisdiction in this case after a valid notice of deficiency was sent to petitioners, and they in turn filed a timely petition. Secs. 6212(a) and (b); 6213(a). Once our jurisdiction is invoked, it remains unimpaired until we decide the controversy. Dorl v. Commissioner, 57 T.C. 720, 722 (1972), affd. per curiam 507 F.2d 406 (2d Cir. 1974). Petitioner has not set forth any cogent reasons in his objection why we should deny respondent's motion for entry of decision, and petitioner Doris J. Minovich has not filed any objection. Therefore, based on the record in this case, respondent's Motion for Entry of Decision will be granted. Although respondent has not requested an award of a penalty under the provisions of section 6673, the Court may, on its own initiative, require a taxpayer to pay such a penalty to the United States where the circumstances justify its *101 imposition. Section 6673(a)(1) provides: (a) TAX COURT PROCEEDINGS. -- (1) PROCEDURES INSTITUTED PRIMARILY FOR DELAY, ETC. -- Whenever it appears to the Tax Court that -- (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies,
the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000.
Here we have a petitioner who was not only involved in an abusive tax shelter, but has also taken frivolous and groundless positions, and has maintained this proceeding primarily for delay. Consequently, we will require petitioner John W. Minovich to pay to the United States a penalty of $ 1,000 under section 6673. To reflect the foregoing, An order and decision for respondent will be entered. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Section 6621(d) was amended and redesignated as section 6621(c) by the Tax Reform Act of 1986, sec. 1151(c)(1), Pub. L. 99-514, 100 Stat. 2744.↩
2. 120 percent of the interest due on the deficiency.↩
2. The Stipulation of Settlement filed in the companion case at docket No. 29401-86 provides for the following: (1) The parties stipulated that, for purposes of valuation of the master sound recordings purportedly leased by petitioners from Music Masters, Ltd., they would be bound by the result in the case entitled Joan Propst Maultsby, Petitioner v. Commissioner of Internal Revenue, Respondent, docket No. 36109-85, which was designated as "The Controlling Case"; (2) the parties stipulated that deductions or credits allowable to petitioners by virtue of their investment in Music Masters, Ltd. should be determined in the same manner, and to the same extent, that such deductions and/or credits are determined by the Court to be allowed to the taxpayer in "The Controlling Case"; (3) the parties stipulated that for purposes of the imposition of additions to taxes and additional interest that they would be bound by the result in the related case captioned Exter G. Gilmore, Jr. and Olivia G. Gilmore, Petitioners v. Commissioner of Internal Revenue, Respondent, docket No. 45324-85, designated as "The Controlling Penalty Case" (the Gilmore case was part of the consolidated group of cases pending before the Court under the caption of C.D. Hunt, Jr., et al., Petitioners v. Commissioner of Internal Revenue, Respondent↩, docket Nos. 32817-85, et al.); and (4) the parties stipulated that a decision shall be submitted in this case when the decisions in "The Controlling Case" and "The Controlling Penalty Case" become final under section 7481.
3. The executed decision document was received by the Court at a Special Trial Session in Winston-Salem, North Carolina, on June 14, 1993.↩